# 98 DTA 130

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE PONCE Y AIBONITO
### PANEL I

GOBIERNO MUNICIPAL AUTONOMO DE PONCE
Recurrente

v.

ADMINISTRACION DE REGLAMENTOS Y PERMISOS
Recurrida

Núm. KLRA-97-00359

San Juan, Puerto Rico, a 19 de marzo de 1998

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte recurrente, Gobierno Municipal Autónomo de Ponce, en lo sucesivo el Municipio, nos solicita la revisión de una resolución emitida por la Administración de Reglamentos y Permisos, en adelante A.R.P.E., el 28 de enero de 1997, en el caso núm. 78-63-B-196-PPL, mediante la cual se enmendó la resolución emitida el 13 de diciembre de 1982, se aprobó el plano de inscripción sustituto, y se hizo constar que la cabida correcta de la parcela rotulada como parque pasivo era la indicada en el plano de inscripción aprobado.

El Municipio alega que erró A.R.P.E. *"al no considerar lo dispuesto en el Plan de Ordenación Territorial y al no solicitar y considerar los comentarios al Municipio Autónomo de Ponce durante el proceso de evaluación de la solicitud de enmienda presentada por la parte proponente en el caso Núm. 78-63-B-196-PPL, a lo que venía obligada a tenor con el Artículo 13.012 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, Ley de Municipios Autónomos de Puerto Rico".*

Entendemos que procede dejar sin efecto la resolución recurrida, aunque por fundamentos distintos a los alegados por el Municipio.

### I

Examinemos el trasfondo fáctico y procesal que dio margen a la presentación de este recurso.

En el año 1977 el Ing. Juan Torres Laó, el proponente, presentó ante A.R.P.E. una solicitud para el desarrollo y construcción de una urbanización denominada *"Cerca del Cielo"*, que estaría ubicada en el Barrio Canas del Municipio de Ponce, P.R. El 14 de julio de 1978, A.R.P.E. emitió una resolución mediante la cual aprobó los planos de construcción para la referida urbanización la cual constaría de 62 solares. Al proyecto se le asignó el núm. 78-63-B-196-PPF.

El 13 de diciembre de 1982, A.R.P.E. emitió una resolución en la que aprobó la segregación e inscripción de una parcela de terreno con una cabida superficial de 6030.65 metros cuadrados que serviría de parque pasivo de la urbanización, consulta núm. 78-63-B-196-PPL. El 24 de abril de 1989 se autorizó la primera enmienda al plano de construcción originalmente aprobado el 14 de julio de 1978 para reducir el número de solares del proyecto de sesenta y dos (62) a treinta y dos (32). El 3 de mayo de 1990 se aprobó la segunda enmienda a los planos de construcción mediante la cual se aumentó el número de solares residenciales del proyecto de treinta y dos (32) a cuarenta y cinco (45).

No obstante, por razones que no es necesario reseñar, el proyecto no fue construido durante el período de vigencia otorgado por A.R.P.E.

Mientras el caso estaba en dicha etapa administrativa se aprobó la Ley Núm. 81 del 30 de agosto de 1991, conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. secs. 4001 y ss. El 25 de noviembre de 1992, el Municipio de Ponce, A.R.P.E. y la Junta de Planificación de Puerto Rico suscribieron el *"Convenio de Transferencia de Competencias de la Junta de Planificación y la Administración de Reglamentos y Permisos por el Gobierno Central de Puerto Rico al Municipio de Ponce"*, en lo sucesivo el Convenio, mediante el cual se le transfirieron al Municipio de Ponce ciertas facultades de A.R.P.E. y de la Junta de Planificación.

No es hasta el 1995 que el proponente realiza gestiones para continuar con la tramitación del proyecto de la urbanización *"Cerca del Cielo"*. El 27 de diciembre de 1995 el proponente presentó en la Oficina de Permisos del Municipio de Ponce, en adelante Oficina de Permisos, una carta para que dicha oficina determinara si tenía jurisdicción para evaluar el proyecto en cuestión.

Fundamentándose en las disposiciones de la Ley de Municipios Autónomos, *supra*, y el Convenio, el 6 de febrero de 1996 el Municipio le envió una comunicación a la parte proponente indicándole que la consulta objeto de estudio estaba bajo la jurisdicción del Municipio y no de A.R.P.E.

El Municipio señaló en dicha comunicación que *"[l]a consulta que nos ocupa no constituye un proyecto o tipo de obra cuya facultad de consideración esté retenida por las agencias públicas centrales"*. Más adelante dispuso que *"[e]n el caso que nos ocupa, ya la Administración de Reglamentos y Permisos emitió una decisión final en la etapa correspondiente a las obras de urbanización autorizando las mismas. Por tal razón las próximas etapas corresponden ser evaluadas por esta oficina"*.

Por ello, el 13 de febrero de 1996, el proponente presentó una solicitud de reapertura del caso ante la Oficina de Permisos para proceder a someter los endosos de las agencias concernidas en cuanto a la aceptación de las facilidades y someter conjuntamente el plano de inscripción final.

Así las cosas, el 2 de octubre de 1996 el proponente presentó ante la Oficina de Permisos un plano de inscripción del proyecto y solicitó la segregación parcial de 37 solares del mismo. El Municipio le asignó a dicha solicitud el núm. 96-63-C-506-UPPI. El 14 de octubre de 1996 la parte proponente presentó ante la Oficina de Permisos un memorial explicativo en el cual se describió el proyecto en detalle y se solicitó una audiencia para dilucidar la cuestión de la segregación. En la hoja de presentación del referido caso, la Oficina de Permisos hizo constar que existían diferencias entre las obras de urbanización aprobadas por A.R.P.E. y las obras construidas según el Plano de Inscripción presentado ante dicha Oficina. Específicamente, los documentos presentados por el proponente reflejaban un total de cincuenta (50) solares, mientras que A.R.P.E. había aprobado sólo cuarenta y cinco (45) en la última enmienda que se le hizo al proyecto el 3 de mayo de 1990. En adición, existía una discrepancia en cuanto a la cabida del parque pasivo, la cual se había reducido. Debido a ello, el 28 de octubre de 1996 la Oficina de Permisos emitió una *"Notificación de Objeción"* indicándole al proponente que *"[p]revio a la evaluación de la solicitud deberá someter una enmienda a los planos de las obras de urbanización que incorporen los cambios realizados al proyecto en cuestión"*. Por ello, el 20 de noviembre de 1996, la parte proponente sometió ante la Oficina de Permisos una enmienda a los planos de urbanización del proyecto.

El 3 de diciembre de 1996 el Municipio elevó el caso ante A.R.P.E. toda vez que *"la Oficina de ARPE expidió el permiso de construcción"*. El Municipio aclaró en tal comunicación que la elevación del expediente no constituia una evaluación o endoso del Municipio al proyecto en cuestión y le advirtió a la agencia que tenía que cumplir con lo dispuesto en el Artículo 13.012 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4610, a los efectos de que debía evaluar la solicitud de acuerdo al Plan de Ordenación Aplicable y solicitarle los comentarios.

El 15 de enero de 1997 A.R.P.E. emitió una resolución en la que enmendó por tercera vez el permiso de urbanización expedido el 14 de julio de 1978 y, entre otras cosas, aumentó el número de solares a cincuenta (50) y redujo el área del parque pasivo a 4,490.4451 metros cuadrados. En dicha

resolución A.R.P.E. le indicó a la parte proponente que, previo a la inscripción de los solares del proyecto, tenía que cumplir con ciertos requisitos, incluyendo el que sometiera la enmienda correspondiente a los planos del parque pasivo en el caso núm. 78-63-196- B-PPL, de manera que se reflejara la reducción en cabida aprobada.

El 21 de enero de 1997 la parte proponente envió una carta a la Oficina de Permisos en la que le solicitó que, si le correspondía a A.R.P.E. aprobar la segregación del parque pasivo, elevara el expediente ante dicha agencia lo antes posible. El 22 de enero de 1997 la parte proponente presentó ante A.R.P.E. una solicitud de enmienda al plano de construcción para aumentar el número de solares del proyecto a cincuenta (50).

El 28 de enero de 1997 A.R.P.E. emitió la resolución recurrida en la que se enmendó la resolución dictada el 13 de diciembre de 1982, en cuanto a la cabida del parque pasivo, se aprobó el plano de inscripción sustituto, y se hizo constar que la cabida correcta de la parcela rotulada como parque pasivo era la indicada en el plano de inscripción aprobado. Dicha resolución fue notificada el 30 de enero del mismo año. El Municipio solicitó reconsideración de dicha decisión el 19 de febrero de 1997, en el caso 78-63-B-196-PPL, alegando que A.R.P.E. tenía que solicitarle los comentarios al Municipio antes de resolver dicha solicitud de conformidad con lo dispuesto en el Artículo 13.012 de la Ley de Municipios Autónomos, *supra*. A.R.P.E. acogió dicha solicitud de reconsideración, pero no la resolvió dentro del término reglamentario dispuesto en la sección 3.15 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2165. Inconforme, el Municipio presentó recurso de revisión ante nos solicitando la revocación de dicha resolución.

Posteriormente, le concedimos término a la agencia recurrida para que mostrara causa por la cual no debíamos revocar la resolución recurrida. En su comparecencia, alega que no tiene que solicitarle los referidos comentarios al Municipio, toda vez que el caso se había originado ante A.R.P.E. mucho antes de la aprobación de la Ley de Municipios Autónomos, *supra*, y del Convenio y, por tanto, se trataba de un procedimiento que estaba pendiente ante dicha agencia.

Examinemos, a continuación, el derecho aplicable a la situación de autos.

## II

La Ley de Municipios Autónomos, *supra*, fue aprobada con el propósito de otorgarle a los municipios *"el máximo posible de autonomía"*. En la referida ley se establecen los mecanismos para que los municipios tengan los poderes y facultades que son esenciales para un funcionamiento democrático efectivo; facultades que antes de la aprobación de la ley residían exclusivamente en el gobierno central. *Id.* Cónsono con dicha política pública, el 25 de noviembre de 1992 el Gobierno Central y el Municipio de Ponce firmaron un *"Convenio de Transferencia de Competencias de la Junta de Planificación y la Administración de Reglamentos y Permisos"* (el Convenio) con el propósito de evitar la extrema centralización y la alta burocratización que afecta la calidad de los servicios básicos y necesarios que recibe la ciudadanía. Véase, Preámbulo del Convenio, a la pág. 2.

El Artículo 1.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4002, dispone que:

*"Los poderes y facultades conferidos a los municipios por este subtítulo o cualquier otra ley, excepto disposición en contrario, se interpretarán liberalmente, de forma tal que se propicie el desarrollo e implantación de la política pública enunciada en este subtítulo de garantizar a los municipios facultades necesarias en el orden jurídico, fiscal y administrativo para atender eficazmente las necesidades y el bienestar de los habitantes del mismo".*

La Asamblea Legislativa no transfirió de manera absoluta todas las facultades del Gobierno Central a los municipios, ya que reservó ciertas facultades para la consideración exclusiva de diversas agencias estatales. En el Artículo 13.012 de la Ley de Municipios Autónomos, *supra*, se enumeran las siguientes facultades que permanecieron bajo la consideración de la Junta de Planificación y de A.R.P.E.:

*"La Junta de Planificación y la Administración de Reglamentos y Permisos, no obstante las*

*transferencias realizadas, se reservarán la facultad de considerar lo siguiente:*

*(a) Proyectos privados de carácter o impacto regional, no incluidos en un Plan de Ordenación y que sean importantes para la salud, seguridad y bienestar de la región.*

*(b) Proyectos de las agencias públicas no incluidos en el Plan de Ordenación.*

*(c) Variaciones de usos y variaciones de intensidad en construcción o uso.*

*(d) Proyectos municipales, no delegados expresamente en un convenio o no incluidos en el Plan de Ordenación.*

*Ningún municipio que tenga la facultad para evaluar y expedir permisos para el tipo de obra o proyecto cuya facultad de consideración se retiene por las agencias públicas podrá negarse a aprobar la obra o proyecto, de estar dicha obra o proyecto en conformidad con lo dispuesto por las agencias públicas, ni podrá modificar las condiciones impuestas por éstas.*

*El reglamento que a estos efectos adopte la Junta de Planificación dispondrá los procesos de radicación y evaluación de los proyectos cuya facultad de evaluación se reserva por las agencias públicas, tomando en consideración lo siguiente:*

*(a) La agencia pública concernida considerará lo dispuesto en el Plan de Ordenación aplicable al evaluar la solicitud y tomará las consideraciones necesarias para armonizar, en lo posible, con el Plan.*

*(b) La agencia pública concernida solicitará comentarios al municipio en la evaluación de la solicitud...".*

En los casos en que un municipio haya adquirido las transferencias hasta la Jerarquía V inclusiva, todas las solicitudes de autorización o permiso, incluyendo las reservadas por la Junta de Planificación o la Administración de Reglamentos y Permisos, se radicarán ante la Oficina de permisos del municipio. Dicha Oficina, después de examinar el expediente, en aquellos proyectos cuya facultad de consideraciones de las agencias centrales, tramitará el expediente a la agencia correspondiente en un período que no excederá de los diez días siguientes a la fecha de la radicación de la solicitud para que ésta actúe acorde a la ley.

Por último, en ese mismo artículo, se prescribe que:

*"Todo procedimiento pendiente ante la Junta de Planificación, la Administración de Reglamentos y Permisos, la Junta de Apelaciones de Construcciones y Lotificaciones, o ante cualquier tribunal a la fecha de la transferencia de las facultades de ordenación territorial a un municipio se continuará tramitando por las entidades estatales concernidas hasta que se tome una decisión final sobre el procedimiento en consideración".*

### III

Nos corresponde resolver, esencialmente, cuál de las agencias, si A.R.P.E. o la Oficina de Permisos del Municipio de Ponce, tiene la facultad para evaluar una solicitud de enmienda a los planos de construcción que habían sido originalmente aprobados por la agencia central.

De entrada debemos aclarar que rechazamos la posición asumida por A.R.P.E. a los efectos de que el proyecto en cuestión estaba pendiente ante dicha agencia y, por ello, retuvieron la facultad para evaluar el mismo desde sus inicios y en todas sus etapas posteriores.

En el caso de autos, A.R.P.E. había emitido, antes de la aprobación del Convenio y la Ley de Municipios Autónomos, *supra*, varias resoluciones referentes al proyecto de urbanización *"Cerca del Cielo"*.

El 3 de mayo de 1990, A.R.P.E. emitió una resolución en la cual aprobó una segunda enmienda a

los planos de construcción para la urbanización, los cuales habían sido aprobados originalmente el 14 de julio de 1978. Esta enmienda estaba relacionada con el número de solares que tendría el proyecto. En esa resolución se dispuso, además, que *"[e]ste permiso no varía las condiciones establecidas en el permiso de urbanización expedido el 14 de julio de 1978 y su enmienda. Los mismos se mantienen en todo su vigor y efecto"*. Una de las condiciones que se mantuvo en todo su vigor y efecto era la referente al término de vigencia del permiso en cuestión. A tales efectos, el permiso expedido por A.R.P.E. el 14 de julio de 1978 disponía, en lo pertinente, lo siguiente:

*"La aprobación del presente Plano de Construcción estará vigente por un período de tres años, a partir de la fecha de este Informe, entendiéndose que de no iniciarse la construcción de las facilidades o en su efecto garantizarse las mismas mediante la prestación de las fianzas correspondientes dentro del término indicado, se interpretará como que se ha desistido del caso, quedando el mismo ARCHIVADO para todos los efectos legales".*

Contrario a lo señalado por A.R.P.E., la aprobación de la segunda enmienda el 3 de mayo de 1990 constituyó una decisión final sobre el procedimiento ante la consideración de A.R.P.E., el cual perdió vigencia con el transcurso de los tres años.

En la resolución emitida el 13 de diciembre de 1982 se aprobó la segregación e inscripción de una parcela con una cabida de 6030.65 metros cuadrados que serviría de parque pasivo en el proyecto *"Cerca del Cielo"*, caso núm. 78-63-B196-PPL. Esta resolución representaba otra etapa en la consulta núm. 78-63-B-196-PPF relacionada con la referida urbanización, pues en el plano de construcción aprobado el 14 de julio de 1978 se había rotulado el área que estaría dedicada a parque pasivo. La resolución fue notificada a las partes y constituyó una decisión final de A.R.P.E. en cuanto a la cabida del referido parque.

Por tanto, habiendo A.R.P.E. tomado una decisión final en cuanto a los permisos concedidos a la parte proponente, y toda vez que la Ley de Municipios Autónomos, *supra*, y el Convenio estaban vigentes, la solicitud de reapertura tenía que ser presentada ante la Oficina de Permisos del Municipio de Ponce para continuar con los trámites referentes al proyecto de la urbanización *"Cerca del Cielo"*.

Así las cosas, el 13 de febrero de 1996 la parte proponente presentó ante la Oficina de Permisos una solicitud de reapertura del proyecto *"Cerca del Cielo"* para continuar con los trámites necesarios para la conclusión del mismo. No fue hasta el 2 de octubre de 1996 que el proponente solicitó la segregación de 37 solares del proyecto y sometió un plano de inscripción parcial. El Municipio, al evaluar la solicitud presentada por la parte proponente, se percató que los planos de inscripción presentados por aquélla no concordaban con los planos que previamente había autorizado A.R.P.E. El Municipio le ordenó a la parte proponente que, antes de evaluar la solicitud de segregación, presentara una enmienda a los planos de la urbanización en la cual se incluyeran los cambios propuestos al número de solares y a la cabida del parque de recreación pasiva. La parte proponente presentó la enmienda a los planos de urbanización del proyecto ante la Oficina de Permisos. El Municipio, entonces, elevó el expediente ante A.R.P.E. a los únicos fines de que dicha agencia considerara las enmiendas a los planos de urbanización que previamente había aprobado.

El Municipio consideró que toda vez que fue A.R.P.E. quien aprobó originalmente el permiso de construcción para la urbanización y que ya las obras relativas a las facilidades de agua, luz y las calles estaban construidas, la facultad para enmendar el permiso le había sido reservada a dicha agencia.

Entendemos que erró el Municipio al elevar el expediente ante A.R.P.E. No hemos encontrado disposición en la ley, en los reglamentos, ni en el convenio que establezca que, con posterioridad a la vigencia del Convenio y de la Ley de Municipios Autónomos, *supra*, la facultad para evaluar las enmiendas a los planos de construcción le corresponda a las agencias centrales. ▮ El Municipio tampoco ha citado disposición alguna a esos efectos. De hecho, la elevación del expediente ante A.R.P.E. contradice la postura asumida por el Municipio desde el 6 de febrero de 1996 cuando le notificó al proponente que *"[l]a consulta que nos ocupa no constituye un proyecto o tipo de obra cuya facultad de consideración esté retenida por las agencias públicas centrales"* y que *"[e]n el caso que nos ocupa ya la Administración de Reglamentos y Permisos emitió una decisión final en la etapa correspondiente a las obras de urbanización autorizando las mismas. Por tal razón las próximas*

*etapas corresponden ser evaluadas por esta oficina".* Entre esas próximas etapas, podemos incluir las enmiendas a los planos de construcción, habida cuenta que ya A.R.P.E. había emitido una decisión final en la evaluación del proyecto *"Cerca del Cielo"* en cuanto a la cabida del parque pasivo y al número de solares del proyecto. Es preciso concluir, entonces, que no era necesario devolverle el caso a A.R.P.E. para que evaluara las enmiendas a los planos de urbanización del proyecto.

El Municipio, por virtud de la aprobación del Convenio y de la Ley de Municipios Autónomos, *supra*, tenía la facultad para aprobar las enmiendas a los planos presentados por la parte proponente y todos los asuntos relacionados con el proyecto en cuestión. No estamos ante una de las situaciones establecidas en el Artículo 13.012 de la Ley de Municipios Autónomos, *supra*, en las que A.R.P.E. se reservó la facultad de evaluación. No es el Municipio quién determina, a su conveniencia, quien tiene la facultad para evaluar un asunto en específico. Por el contrario, es en la Ley de Municipios Autónomos, *supra*, en los reglamentos y en el propio convenio, que se establecen las facultades que le fueron reservadas a las agencias centrales luego de la aprobación del convenio y de la Ley de Municipios Autónomos, *supra*.

Somos conscientes de que en el presente recurso el recurrente, Municipio de Ponce, no ha planteado que el caso se le debe devolver a su Oficina de Permisos. Bajo ningún concepto ello obra como un impedimento a que reconozcamos que ese es el remedio que procede en derecho. Veamos.

El recurso que nos ocupa está inextricablemente enlazado con otro recurso que resolvemos hoy (KLRA9700219), en el cual precisamente estamos dejando sin efecto la resolución emitida por A.R.P.E. el 11 de febrero de 1997 e instruimos a dicha agencia a que devuelva dentro de diez (10) días, contados a partir de que la sentencia advenga final y firme, el expediente relativo a la consulta núm. 96-63-C-506-UPPI a la Oficina de Permisos del Municipio de Ponce. Le ordenamos, además, a la Oficina de Permisos, a que en un término no mayor de treinta (30) días, resuelva todo lo relativo a las enmiendas a los planos de construcción de la urbanización Cerca del Cielo, incluyendo lo referente al número de solares del proyecto, la cabida del parque pasivo, y a la segregación de los solares solicitada por la parte proponente.

Debemos tener presente que el Municipio de Ponce solicitó la consolidación de ambos recursos. Sería un acto inútil y espúreo emitir resoluciones contradictorias devolviendo uno de los casos a la Oficina de Permisos de Ponce, y, requerirle simultánea e innecesariamente a A.R.P.E., que le solicite un informe al Municipio de Ponce para que, entonces, A.R.P.E. devuelva el expediente, sin ulterior acción, a la Oficina de Permisos del Municipio. Es sabido que *"el debido proceso de ley ni el derecho coexisten para exigir cosas imposibles, absurdas, ni inútiles e innecesarias."* Pueblo v. Andréu González, 105 D.P.R. 315, 321 (1976); *López, Alcalde v. Tribunal Superior*, 90 D.P.R. 304, 314 (1964); *Piereschi v. Comisionado Agricultura*, 62 D.P.R. 114, 120 (1943).

Pero hay más: en su comparecencia del 19 de agosto de 1997, A.R.P.E. señala que lo planteado constituye una cuestión jurisdiccional. Específicamente el recurrido expresa en su escrito que *"aquí no tiene jurisdicción el Gobierno Autónomo de Ponce".* Ibid, pág. 2. Un tribunal apelativo debe examinar su propia jurisdicción así como aquella del foro de donde procede el recurso, lo cual es su obligación. *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991).

Es asunto trillado que es imposible abdicar a la jurisdicción que se tiene, y que, en ausencia de ella, ninguna agencia o tribunal puede arrogársela. No existe discreción para asumir jurisdicción donde no la hay. *Martínez v. Junta de Planificación*, 109 D.P.R. 839 (1980); *Maldonado v. Pichardo*, 104 D.P.R. 778 (1976). La Oficina de Permisos del Municipio de Ponce no puede conferirle a A.R.P.E. una jurisdicción que no tiene, máxime cuando este Panel ha resuelto anteriormente, en más de una ocasión, que A.R.P.E. no es la agencia con jurisdicción para dilucidar controversias similares a la de autos. Véase nuestras sentencias en los casos Núm. KLRA-96-00260, emitida el 15 de diciembre de 1997, y el caso Núm. KLRA-97-00523, el 30 de enero de 1998.

Por ello, es indispensable que adjudiquemos a cuál de las agencias administrativas corresponde resolver la controversia planteada en las solicitudes presentadas por el proyectista. No es justo mantener al proyectista atrapado en el ir y venir administrativo. El único resultado de ese vaivén es la *dilación indebidamente prolongada de los procedimientos, con el consiguiente saldo negativo de*

costos adicionales innecesarios para todas las partes.

Es norma reiterada en derecho apelativo que la revisión de un dictamen judicial se da en contra de la decisión y no de sus fundamentos. Ese principio es especialmente importante en lo referente a cuestiones jurisdiccionales.

Sería ilógico que le reconociéramos al Municipio de Ponce la facultad de transferir a A.R.P.E. una jurisdicción que no tiene, vulnerando, de paso, decisiones previas nuestras que han dictaminado que es a la Oficina de Permisos del Municipio a quien corresponde dilucidar esos asuntos.

Constituiría una incongruencia que dictaminemos que A.R.P.E. no tiene jurisdicción para considerar la controversia de autos, y le permitiéramos que la adjudicara. *Brunet Justiniano v. Hernández Colón*, **92 J.T.S. 45** (1992).

En consecuencia tenemos la obligación de cumplir con nuestra directriz procesal de que *"[t]oda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones..."*. 32 L.P.R.A. Ap. III R. 43.6.

Cabe destacar que las actuaciones contradictorias del Municipio en la tramitación de la consulta relacionada con el proyecto de urbanización *"Cerca del Cielo"* han provocado una tardanza inexcusable en la tramitación del mismo, situación que le ha causado grandes inconvenientes a la parte proponente.

### IV

Por los fundamentos antes expuestos, expedimos el auto solicitado, dejamos sin efecto la resolución dictada por A.R.P.E. el 28 de enero de 1997 e instruimos a dicha agencia a que dentro del plazo de diez (10) días, contados a partir de que esta Sentencia advenga final y firme, devuelva el expediente a la Oficina de Permisos del Municipio de Ponce. Le ordenamos, además, a la Oficina de Permisos que, en un término no mayor de treinta (30) días, resuelva todo lo relativo a las enmiendas a los planos de construcción de la urbanización Cerca del Cielo, incluyendo lo referente al número de solares del proyecto y la cabida del parque pasivo, y a la segregación de solares solicitada por la parte proponente en la consulta núm. 96-63-C-506-UPPI. ■

El Juez Aponte Jiménez disiente con opinión escrita.

Así lo pronunció y lo manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 130

**1.** Hemos examinado el Reglamento de Planificación Núm. 24, Reglamento sobre los Planes de Ordenación Municipal y la Transferencia y Administración de Facultades; así como el Reglamento de Planificación Núm. 12, Reglamento para la Certificación de Proyectos de Construcción, y no hemos hallado disposición alguna a dichos efectos.

**2.** Véase, además, lo resuelto con esta misma fecha en el caso Núm. KLRA9700219.

### VOTO DISIDENTE DEL JUEZ DE
### APELACIONES SR. APONTE JIMENEZ — 98 DTA 130

Disiento de la sentencia que emite la mayoría de este panel. Dicho dictamen resuelve, sin que se le pida por alguna de las partes, que la facultad y jurisdicción en este caso para enmendar un plano de inscripción relacionado con un proyecto de vivienda, compete a la Oficina de Permisos del Municipio Autónomo de Ponce, en lugar de a la Administración de Reglamentos y Permisos (A.R.P.E). Le ordena a dicha dependencia municipal que en un término de treinta (30) días resuelva todo lo

concerniente a las enmiendas sometidas al referido plano de inscripción aprobado inicialmente por la A.R.P.E., sin tener elementos suficientes sobre el efecto que el trámite ordenado conlleva en cuanto a evaluación, estudio e impacto económico para todas las partes envueltas.

Sin ulterior consideración, me refiero a mi voto disidente emitido en el caso Núm. KLRA-96-260. Al igual que allí sostuve, me reafirmo en que no podemos ni debemos dilucidar controversia alguna relacionada con la jurisdicción en materia de la delegación de competencias transferidas a los municipios de conformidad con la Ley de Municipios Autónomos, sin que las partes acudan antes al mecanismo y procedimiento contemplado en la Ley de Municipios Autónomos sobre conciliación y arbitraje. Véase, 21 L.P.R.A. secs. 4651-4661 y *Municipio de Ponce v. Rosselló González*, **94 J.T.S. 112.** Menos aún cuando ello no se plantea, cuestiona ni levanta. A mi juicio, lo más prudente, ágil, expeditivo y ahorrador para todas las partes concernidas en este caso, tal y como llana y sencillamente lo solicitó el Municipio Autónomo de Ponce en el recurso que nos presenta, es resolver ordenar a la A.R.P.E. la reapertura del caso para que evalúe la enmienda al plano de inscripción propuesto, según le fue referida por la Oficina de Permisos del Municipio de Ponce, y le requiera a ésta sus comentarios para que los considere al examinar la enmienda sometida. A fin de cuentas, por haber sido la A.R.P.E. quien aprobó el plano de inscripción original eso, y nada más, es lo que nos solicita el recurrente, Gobierno Municipal Autónomo de Ponce en el recurso instado.

**JOSE M. APONTE JIMENEZ**
**Juez de Apelaciones**